TOM O'CONNOR v. THE STATE.

*No. 3290.   Decided November 30.*

**1.   Charge of the Court—Burden of Proof.**—Jeopardy is a special plea, the burden of proving which rests upon the accused.   To support the plea in this case it devolved upon the defense to prove that he had been formerly placed upon trial under a valid indictment charging him with the identical offense alleged in the pending indictment; that the said trial was in the District Court of Bosque County, and that without his consent, and without legal cause, the trial court discharged the jury trying him before the said jury had rendered a verdict in the cause.   See the opinion of the court for the substance of evidence *held* to preponderate against, rather than support, the plea of jeopardy; wherefore the trial court did not err in charging the jury to find against the truth of the plea, and in refusing special instructions submitting the plea to the jury.

**2.   Same—Accomplice and Accomplice Testimony.**—Mere presence at the time and place of the commission of the crime, and mere concealment of knowledge that the crime was committed, will not make a person an accomplice to the crime.   A witness. can not be regarded in the light of an accomplice in the absence of proof tending to connect him with the transaction.   The proof in this case failing to so connect the impugned witnesses, the trial court did not err in refusing special instructions submitting to the jury the law governing accomplice testimony.

**3.   Practice—Evidence.**—The second bill of exception recites that the court erred in refusing to permit the defendant to prove by one witness that when Dennis O'Connor informed him in April, 1889, that he (witness) would be called to testify in this case, he paid the said witness $25, though said Dennis O'Connor did not owe the witness any sum; and by another witness that he was in the pay of said Dennis O'Connor in April, 1889, though O'Connor owed him nothing.   This bill of exception is explained by the trial judge to the effect that he refused to permit the witnesses to answer questions propounded by the defense touching the payment of money to them by Dennis O'Connor when they testified as witnesses in another case, but that he told the defendant's counsel he was at liberty to ask the witnesses such questions with respect to their testimony in this case, and that to the repeated questions of counsel whether they had been paid to testify in this case, the said witnesses answered in the negative.   *Held*, that the bill of exception discloses no error.

**4.   Same.**—The defense offered in evidence a certified copy of the petition in a civil suit instituted by defendant in the United States Court against Dennis O'Connor, which evidence was excluded.   *Held*, correct, the relevancy and materiality of such evidence not appearing by the bill of exception or otherwise.

**5.   Same.**—The fifth bill of exception complains that the State's witness C., having testified on cross-examination that he was first told by Dennis O'Connor of this case, and that he would be called as a witness, but that said Dennis O'Connor did not then

pay him $25 to testify on this trial, the defendant proposed to further ask the witness if Dennis O'Connor did not, at that time, though he owed him nothing, give him $25, telling him to use it for his family; the stated purpose of which question was to prove that Dennis O'Connor, in Victoria, in 1889, when the witness's deposition in another case was being taken, paid the witness $25, but owed him no sum of money at that time.   *Held,* that the court did not err in suppressing the question.

6.  **New Trial.**—See the opinion for a showing for new trial *held* insufficient.

7.  **Murder—Fact Case.**—See the statement of the case for the substance of evidence *held* sufficient to support a conviction for murder of the first degree.

Appeal from the District Court of Bosque.   Tried below before Hon. J. M. Hall.

The indictment charged the appellant with the murder of John Dee, in Bosque County, Texas, on the 15th day of May, 1871.   The trial resulted in his conviction in the first degree, and a life term in the penitentiary was the penalty assessed.

The syallabus and opinion summarize the substance of the testimony upon which all of the rulings save that announced in the last head note are predicated.   As bearing upon the grade of homicide found by the jury, it is sufficient for the purposes of this report to note that the testimony for the State, including that of the two eye-witnesses of the killing, discloses these facts:   In May, 1871, Mr. O'Connor, of Refugio County, the uncle of the defendant, started a herd of cattle to Kansas in charge of the deceased.   The defendant was one of the party which went with the herd, but whether or not he went in the capacity of a hired hand or employe does not appear.   He, however, traveled with the party and herd under the deceased's charge until the scene of the murder, in Bosque County, was reached.   The murder was committed about 4 o'clock in the morning after a stormy and tempestuous night, during which the cattle had given the herdsmen a great deal of trouble.   The principal witness for the State, one Corona, testifies that not a great while before the killing he and the deceased left the herd and returned to camp.   They took seats by the fire and conversed for quite a while, during which time the defendant walked about the camp drinking a cup of coffee.   Thirty minutes or more after witness and deceased had stopped talking, the defendant approached the deceased from behind and struck him on the forehead with an axe.   Deceased was in a sitting posture, leaning slightly forward, when struck by the defendant, but the witness could not say whether or not he was asleep.   Witness then got his horse to go back to the herd.   While he was catching his horse he heard a pistol fired at the camp.   On looking back he saw the defendant in the act of putting his pistol into the scabbard.

The other witness who was in the camp at the time of the killing, testified, in substance, that he was asleep when the blow with the axe was inflicted, but waked almost immediately.   As he raised up he saw deceased, with his face and forehead beaten in and bloody, lying before

the fire.   The witness Corona was standing before the fire, and the defendant was walking about the camp.   Soon afterwards Corona left to go to the herd.   A gurgling noise in the throat of deceased attracted the attention of the defendant who, remarking "I don't like for any d—d man to make such a noise as that while I am eating," stooped, placed the muzzle of his pistol to the burr of deceased's ear, and fired.

*Lockett, Lockett & Kimball,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

Willson, Judge.—This conviction is for murder in the first degree, the penalty assessed being confinement for life in the penitentiary.

John Dee was the name of the deceased, and he was killed in Bosque County, in May, 1871.   A few days after he was killed the defendant was arrested charged with the murder, and there is some evidence tending to show that the defendant was indicted for said murder, and that in 1872 he was placed upon trial upon said indictment in the District Court of Bosque County, said trial resulting in a disagreement and discharge of the jury without a verdict having been rendered.   Thereafter the defendant escaped from custody, and remained at large until August, 1889, when he was again indicted for said murder, arrested, and in September, 1889, was tried and convicted as above stated.

In addition to the plea of not guilty, the defendant interposed a special plea of jeopardy in due form, setting up in bar of this prosecution his trial in 1872, and alleging that upon that trial the jury was discharged by the court without his consent and over his protest and without legal cause. In support of this special plea the evidence is very meagre, indefinite, and unsatisfactory.   It seems that all the papers in the case tried in 1872 had been destroyed or lost, as well as the minutes of the court of the term at which said trial occurred.   The only record evidence relating to said case which could be produced was an entry upon the judge's docket as follows:  "No. 325.   The State of Texas v. Thomas O'Conner.   Murder. Filed June 7, 1871.   June 16, 1871. Continued by State; attachments to Victoria County for State's witnesses."   It was proved by several witnesses that in 1872 the defendant was put upon his trial in the District Court of Bosque County for murder, but the witnesses who testified as to said trial all stated that they understood the name of the alleged murdered man in that case to be John Dees.   None of the witnesses remembered to have seen or heard read the indictment.   None of them testified to the contents or even the substance of the indictment.   They differed in their recollection and statements as to the time that the jury deliberated upon the case—some stating that the jury was out on the case two or three hours only, while others thought the jury was out a longer time,

·the recollection of one witness being that it was out twenty-four hours. None of the witnesses testified that the jury was discharged from the case over the protest or against the consent of the defendant. This being in substance the evidence upon the special plea, the court instructed the jury that they would find the said plea to be untrue. Defendant requested an instruction submitting said plea to the jury upon the evidence adduced, which the court refused. It is insisted by counsel for defendant that the court erred in instructing the jury to find said plea untrue, and in refusing to permit the jury to determine from the evidence whether it was true or untrue.

Jeopardy is a special defense, and the burden of establishing it clearly and satisfactorily rests upon the defendant. In this case it devolved upon the defendant to prove:

1. That he had been formerly put upon trial under a valid indictment charging him with the murder of John Dee.

2. That said trial was in the District Court of Bosque County.

3. That without his consent, and without legal cause, the trial court discharged the jury trying him before said jury had rendered a verdict in said cause.

Until these essentials of jeopardy were established affirmatively by the defendant, the presumption would prevail that the trial court in discharging the jury acted upon legal cause and did not abuse its discretion. Powell v. The State, 17 Texas Ct. App., 345; Schindler v. The State, Id., 408; Brady v. The State, 21 Texas Ct. App., 659; Jones v. The State, 13 Texas Ct. App., 1.

In this case it was not proved that defendant had been formerly tried upon a valid indictment charging him with the murder of John Dee. There is no proof whatever as to the validity of the indictment upon which he was tried in 1872. The preponderance of the evidence is that if tried upon an indictment it was one which charged him with the murder of John Dees, not John Dee, and not, therefore, the same offense charged in the indictment in this case. It was not proved that the trial court discharged the jury without legal cause, and without the consent of the defendant. In the absence of such proof, it must be presumed that the trial court in discharging the jury did not abuse the discretion vested in said court by the law. Branch v. The State, 20 Texas Ct. App., 599.

As the defendant wholly failed to establish his special defense of jeopardy by evidence, it was not error for the court to refuse to submit that issue to the jury, and to direct the jury to find the special plea untrue. Varnes v. The State, 20 Texas Ct. App., 107.

It is claimed by counsel for appellant that the Mexican witnesses, Corona, De la Rosa, and Hernandez, were accomplices to the murder of John Dee, and that the court erred in refusing to instruct the jury in

relation to accomplice testimony. After a careful examination of the evidence before us we conclude, with the trial judge, that such an instruction was not required. Circumstances apparently casting some suspicion upon said witnesses are satisfactorily accounted for and explained by the evidence. There is no evidence from which it could be reasonably concluded that either of said witnesses was in any manner *particeps criminis* in the murder, or that they, or either of them, were connected with the crime by unlawful act or omission, transpiring either before, at the time of, or after the commission of said murder. A witness can not be regarded as an accomplice when there is nothing shown to connect him in any manner with the transaction. Ham v. The State, 4 Texas Ct. App., 645. Mere presence at the time and place of the commission of a crime does not make a person an accomplice, nor will the mere concealment of knowledge that a crime has been committed make the person having such knowledge an accomplice. These Mexican witnesses, when the murder occurred, were among strangers, three hundred miles from their homes; they were hired hands assisting in driving a large herd of cattle to a distant market; they did not understand or speak the English language; the defendant and the deceased were Americans, in whom said witnesses had no particular interest. Under these circumstances it was but natural that said witnesses would remain silent as to the murder, and take no steps to have the defendant arrested and punished. We do not think that the issue as to whether or not said witnesses were accomplices was presented by the evidence, and hence it was not error for the court to decline to submit that issue to the jury.

Defendant's bill of exception No. 2 fails to state facts which show that error was committed in rejecting the offered evidence. It appears from the judge's explanation appended thereto that defendant was not denied the privilege of proving, if he could, that the Mexican witnesses had been paid to testify in this case. As far as we can determine from the bill of exception, the ruling of the court was not erroneous.

Bill of exception No. 3 does not show error. It does not show the relevancy or materiality of the petition offered in evidence. It does not show that it had been proved, or would be proved that Dennis O'Connor had bribed, or attempted to bribe witnesses, or otherwise influence them to testify in this case falsely against the defendant. It does not show that defendant proposed and expected to show facts which would in any manner connect Dennis O'Connor with this prosecution. In the absence of such showing the evidence offered was irrelevant and incompetent.

Bill of exception No. 5 shows no error. It was irrelevant to any issue in the case to prove that Dennis O'Connor had paid to witness Corona twenty-five dollars on the occasion of taking said witness's deposition in the civil cause. Such testimony was too remote to even be admissible for the purpose of affecting the credibility of said witness.

As shown by the bills of exceptions and the explanations of the judge thereto appended, the remarks of the counsel for the State in his closing argument to the jury were not materially objectionable; and it does not appear that the defendant was or might probably have been injured by said remarks.

There was no error in refusing defendant a new trial because of the overruling of his application for a continuance. It does not appear that the defendant suffered any injury by reason of not having an interpreter of his own choice present at the trial. An interpreter was sworn at the trial, and interpreted the testimony of the Mexican witnesses. It is not shown, or even claimed by the defendant, that said interpreter was incompetent or that he falsely interpreted. No abuse of the discretion of the court in denying the defendant a continuance to enable him to obtain an interpreter is shown. As to the testimony of the absent witness Cox, when considered in connection with the testimony adduced on the trial, it was immaterial. Conceding that said witness would have testified as stated in the application, his testimony would not have established the special plea of jeopardy, nor any fact which would likely change the result.

There was no error in refusing a new trial upon any of the other grounds set forth in the motion. The evidence conclusively establishes the guilt of the defendant. It conclusively proves that the homicide was murder in the first degree. There was no evidence raising the issue of murder in the second degree or of self-defense, and the court very properly declined to submit said issues to the jury. We find no error in the charge.

Our conclusion upon the whole case is, that the defendant has had a fair and impartial trial, and has been legally and justly convicted, and we affirm the judgment.

*Affirmed.*

Judges all present and concurring.